UNITED STATES v. MILNE et al.

(Circuit Court, S. D. New York. May 31, 1902.)

No. 3,160.

**1. CUSTOMS DUTIES—CLASSIFICATION—SCRAP STEEL.**

Strips of steel cut from the sides of boiler plates after their first trimming, to remove holes or other defects, or to obtain the exact size of plate desired, having two cut edges, but generally untrue, and of varying length, breadth, and thickness, and which after importation are separately rolled into long thin plates, and used for the manufacture of tacks, trunk irons, and other small articles, are "waste or refuse steel fit only to be remanufactured," and dutiable as "scrap steel," under paragraph 122 of the tariff act of 1897, and not under paragraph 135, covering steel in all forms or shapes not specially provided for.

Appeal by the United States from a Decision of the Board of United States General Appraisers Which Reversed the Decision of the Collector of Customs at the Port of New York.

The opinion of the board in the case appealed is as follows:

"The merchandise in question consists of steel-plate shearings, returned by the local appraiser as 'steel boiler plate shearings as steel in all forms and shapes not specially provided for,' and duty was assessed thereon at the rate of four-tenths of 1 cent per pound, under the provisions of paragraph 135 of the act of July 24, 1897. The importers claim said merchandise is dutiable under the provisions of paragraph 122 of said act, the pertinent provisions of which are as follows: 'Scrap steel four dollars per ton; but nothing shall be deemed scrap iron or scrap steel except waste or refuse iron or steel fit only to be remanufactured.' The evidence introduced by both sides to this controversy is voluminous, but there is no contradiction shown as to the facts involved. This merchandise consists of the shearings cut from the ends or sides of steel boiler plates. It appears that when boiler plates are taken out of the rolls at the mills the edges are ragged and uneven; that, in order to make these boiler plates commercially acceptable and practically serviceable, the tops and sides thereof are trimmed off true; and that the pieces which fall off in this process are uniformly known in the trade as scrap. As to these rough and irregular pieces, there is no dispute. They can be used only by remelting or by piling a number of them together, and subjecting them to a rolling process by which they are welded together. Sometimes, however, in order to obtain the exact size desired for the boiler plate, or, in some cases, in order to remove portions containing holes or blemishes, it becomes necessary to subject the boiler plates, after the first trimming, to a second cutting, and the pieces imported are those which are removed from the boiler plates by this second cutting. These pieces vary greatly in length, breadth, and thickness, but have a cut edge on each side, although these edges are as a rule untrue. After importation, the pieces are separately rolled into long thin plates, the width of the resulting plate being about the width of the piece previous to the rolling, and in some cases, before rolling, the pieces are cut into smaller pieces. The plates produced by this rolling process are used for the manufacture of tacks, trunk iron, and other small articles.

"The merchandise is undoubtedly within the established definition of waste. It is spoiled or rejected portions of boiler plates, not suitable for use as boiler plates. It is not a new manufacture in the nature of a by-product, because it has not been made into anything else but steel. It is therefore mere waste or refuse, and the only question to be decided is as to whether or not it is 'fit only for remanufacture.'

"The view of the witnesses on the part of the government seems to be that the plate mill is operated for the production of two things, viz., boiler plates and shearings, and that the scrap or refuse consists only of the pieces first removed, having a single cut edge; that, as the plates are not scrap, but the material for boilers, so these shearings are not scrap, but the material for tacks, hinges, etc.; that, as the making of the boiler from the plates is not a remanufacture, but a further manufacture, so the making of tacks, etc., is not a remanufacture, but a further manufacture; and that remanufacture covers only two processes, (1) melting, or (2) piling up pieces and heating and rolling them together, by which they become welded into one piece. We are unable to agree with this theory. The object of the operation of the plate mill is the production of boiler plates, which are important articles of commerce, especially adapted for one purpose. The pieces sheared off the sides and ends would not be produced if there were any way in which to avoid their production, and this is no more true of the pieces first sheared off, which have only one cut edge, than it is of those afterwards sheared off, having four cut edges. The two processes of shearing produce two grades of scrap, neither of which has been specially manufactured with any particular purpose in view. The tack plates, produced by rolling the shearings, would be in a stage of manufacture corresponding to the boiler plates, and unquestionably would not be scrap or waste. They are material prepared for a particular use; but the merchandise as imported is not tack plates, nor has it been prepared for the purpose of producing tack plates. We are clearly of the opinion that the process to which these shearings are subjected after importation is not further manufacture, but is remanufacture, and we accordingly hold that the merchandise is waste or refuse iron or steel, fit only to be remanufactured. In G. A. 639 this board passed on similar merchandise to that here in question, and held that it was fit only for remanufacture; and in the case of Schlesinger v. Beard, 120 U. S. 264, 7 Sup. Ct. 546, 30 L. Ed. 656, the United States supreme court held that such merchandise was within the definition of 'waste or refuse iron that has been in actual use, and is fit only to be remanufactured.' In the latter case it was conceded that the merchandise was fit only to be remanufactured, and the court passed only on the question as to whether or not it had been in actual use. In treasury decision 21,808 the treasury department, in directing the collector to disregard G. A. 639 and to assess the goods as 'steel in all forms,' from which action of the collector this appeal is taken, gives as the reason that the decision in G. A. 639 was based upon the finding of fact that the merchandise was 'waste or refuse steel, fit only to be remanufactured,' and had 'no commercial value for any other purpose.' It is further stated that the 'department is in receipt of information to the effect that large quantities of so-called steel boiler-plate shearings have been imported * * * cut to specified dimensions, * * * and are used in this country as billets, for the production of sheets or plates of superior quality.' The testimony in this case, and an examination of numerous samples, show that the particular merchandise covered by these protests is not cut to specified dimensions, but, on the contrary, is of various sizes and thicknesses, and is invariably untrue as to the edges, and, as shown above, can be used only for the purpose of remanufacture, and has no commercial value for any other purpose.

"For the reasons given, the protests are sustained and the decisions of the collector reversed."

D. Frank Lloyd, Asst. U. S. Atty.
Jacob Fromme, for importers.

LACOMBE, Circuit Judge. The decision is affirmed on the opinion of the board of general appraisers.